WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>William Ernest Fuller,<br><br>　　　　　Defendant. | CR-06-00825-TUC-RCC (MAA)<br><br>**REPORT AND RECOMMENDATION** |

　　　　The Government's Petition to Revoke Supervised Release (the "Petition") (Doc. 312) was referred to Magistrate Judge Michael Ambri. The Petition alleges three violations: (1) Defendant Fuller failed to follow his probation officer's direction to provide a letter from his employer regarding monitoring of Mr. Fuller's computer use at work, in violation of Standard Condition No. 13; (2) Mr. Fuller failed to install monitoring software on his personal computer, in violation of Special Condition No. 9; and (3) Mr. Fuller used a computer at work without having provided the required employer letter, also in violation of Special Condition No. 9. An evidentiary hearing was held on September 27, 2023. Mr. Fuller was present and assisted by counsel. The Government called Senior Probation Officer Gloria Adamski-Soto and Supervisory Probation Officer Anita Carrizosa to testify. Mr. Fuller called his former employer, Stacy Scheff. The parties stipulated to admission of Government's Exhibits 1-5 into evidence. Mr. Fuller did not offer exhibits.

　　　　Upon consideration of the testimony, exhibits, and arguments, the Magistrate Judge recommends that the District Judge find Mr. Fuller violated Standard Condition No. 3 and

Special Condition No. 9 of his supervised release.

**Procedural Background.**

On March 12, 2008, a jury found Mr. Fuller guilty of one count of attempted transportation and shipping of child pornography and two counts of possession of child pornography. (Doc. 94.) On September 22, 2008, Mr. Fuller was sentenced to 84 months in prison followed by lifetime supervised release. (Doc. 165.) The Court imposed conditions of supervised release (*id.*) and thereafter modified the conditions (Doc. 212). Mr. Fuller's supervised release was revoked on two occasions, each resulting in a term of imprisonment followed by lifetime supervised release. (Docs. 236, 303.) The most recent term of supervised release includes the following conditions:

> *You must follow the instructions of the probation officer related to the conditions of supervision.*

(Doc. 303, p. 1; General Order 17-18, *Standard Condition No. 13*.)

> *You must not possess or use a computer or any computing device (including internet capable devices and cellular telephones) with the capability to communicate with others or to access or download images from the Internet at any location (including place of employment) without the prior written permission of the Probation Officer. This includes any Internet service provider, bulletin board system, or any other public or private network or e-mail system. If internet access is approved by the Probation Officer, you must consent, at the direction of the Probation Officer, to having installed at your own expense, hardware or software systems to monitor your internet use on any internet capable device.*

(Doc. 303, pp. 2-3, *Special Condition No. 9*.)

**Evidentiary Hearing.**

**Gloria Adamski-Soto** testified that she is a senior U.S. Probation Officer who supervises sexual offenders. (Doc. 319, Reporter's Transcript ("RT"), at 5:3-12.) She has been supervising Mr. Fuller since May of 2022. (RT 6:5-6.)

Mr. Fuller's initial term of supervised release began on April 16, 2013. (RT 6:15-18.) He has had two prior revocations, one in October of 2019 and one in May of 2022.

(RT 8:13-18.)

Officer Adamski-Soto filed a revocation packet in this case. (RT 9:1-5.) Mr. Fuller is currently subject to Special Condition No. 9. (RT 9:18-20, 10:2-17.) He "must not possess or use a computer . . . with a capability to . . . access or download images from the internet at any location, including place of employment, without the prior written permission of the probation officer. . . ." (RT 10:4-17.) If internet access is approved, he "must consent . . . to having installed . . . hardware or software systems to monitor [his] internet use on any internet-capable device." *Id*. He is also subject to the standard conditions of release, one of which states that Mr. Fuller must follow the instructions of his probation officer related to the conditions of his supervision. (RT 11:9-16.) When Mr. Fuller was released from his last revocation sentence, Officer Adamski-Soto reviewed the conditions of supervised release with him. (RT 10:18-21.)

On June 4, 2022, Officer Adamski-Soto met with Mr. Fuller at his home. (RT 12:9-13.) She told him that if he wanted to use the internet at his place of employment, he would have to provide her with a letter from his employer stating what safety measures were in place to monitor his internet use at work. (RT 12:14-21.) Officer Adamski-Soto entered a record of her visit in the chronological record. (RT: 13:1-5.) Officer Adamski-Soto did not receive the employer letter before she went on leave on July 14, 2022. (RT 11:18-25, 13:12-13.) Mr. Fuller did not give her any indication that he was working on it. (RT 14:2-4.)

On July 13, 2022, Officer Adamski-Soto had Mr. Fuller sign a computer use agreement and directed him to have computer monitoring software placed on his personal cell phone and personal laptop. (RT 14:5-14.) Pursuant to this agreement and the special conditions of his supervised release, Mr. Fuller was prohibited from using his two personal devices without the monitoring software. (RT 15:10-14.) In fact, he was prohibited from using any other internet-capable device without authorization. (RT 16:3-11.)

On cross-examination, Officer Adamski-Soto testified that she knew that Mr. Fuller was working for an attorney, Stacy Scheff. (RT 17:25, 18:1-6.) She knew attorneys have access to privileged materials. (RT 18:5-9.) And she knew that the monitoring software

would catch all the data that goes through the computer. (RT 20:14-16.) She therefore asked Mr. Fuller to put the monitoring software on his personal computer but not on a work computer. (RT 20:9-13.)

**Anita Carrizosa** testified that she is a supervisory U.S. probation officer. (RT 23:22-25, 24:1-7.) She supervises Officer Adamski-Soto. (RT 24:5-10.) When Officer Adamski-Soto was on leave, Officer Carrizosa was monitoring her cases and emails. (RT 25:16-21.)

Upon reviewing the case file, Officer Carrizosa discovered that Officer Adamski-Soto had received an email from IPPC on July 26, 2022. (RT 26:4-17.) IPPC is an internet software monitoring company. (RT 26:4-17.) The email explained that Mr. Fuller had not kept an appointment with them to install monitoring software. (RT 26:4-17.) On August 5, 2022, Officer Carrizosa contacted IPPC to determine whether Mr. Fuller had rescheduled the appointment. (RT 27:19-22.) On August 9, 2022, IPPC responded that they tried to reach Mr. Fuller again that day but received no answer. (RT 27:19-25, 28:1-3.)

On August 12, 2022, Officer Carrizosa sent a text message to Mr. Fuller asking about the IPPC communication. (RT 29:24-25, 30:1-9.) Mr. Fuller told her that he had the software placed on his cell phone but not his personal computer. (RT 30:1825 31:1.) He did not want the software on his personal computer because he believed that it monitored all his activity, not just his internet use. *Id.* Officer Carrizosa told Mr. Fuller that he cannot use the internet on a device that is not monitored. (RT 31:7-11.) Mr. Fuller told her that he had permission to use "his computer at work for work purposes." (RT 31:12-14.) He further stated, "Plus, I sit right next to my boss. Should I go home now and look for another job?" (RT 32:4-8.) Officer Carrizosa does not know if Mr. Fuller eventually had the monitoring software installed on his personal computer. (RT 34:1-4.)

It is unusual for someone with Mr. Fuller's record to work in an environment where he has access to the internet. (RT 35:20-25, 36:1-9.) There are risks for the employer. (RT 35:20-23.) Mr. Fuller never provided Officer Carrizosa with a letter from his employer documenting the safety measures that would be provided at work. (RT 39:1-3.) There is

1  no such letter from Mr. Fuller's employer in the files.  (RT 30:4-11.)  According to Officer
2  Carrizosa, "It is customary to have all devices monitored."  (RT 41:3-4.)  "However, based
3  on the nature of his employment, installing monitoring software would understandably be
4  problematic . . . ."  (RT 41:4-6.)

5  Mr. Fuller sent Officer Carrizosa a text message stating, "I have been using the
6  computer for a month."  (RT 41:25, 42:1.)  She sent him a text regarding internet use again
7  stating, "Do not use it from any device that is not monitored."  (RT 42:13-17.)  He sent her
8  a text response stating, "I have permission from Gloria to use the computer at work for
9  work, plus I sit right next to my boss."  *Id*.  Officer Carrizosa inferred that Mr. Fuller had
10 been using his computer at work for the last month.  (RT 42:18-25, 43:1-6.)  Officer
11 Carrizosa then spoke with Mr. Fuller's employer, Ms. Scheff, and confirmed that "he had
12 been working for a month."  (RT 43:4-6.)  His employer did not say that Mr. Fuller had
13 been using the computer every single day, but "she did say he had been using the internet."
14 (RT 43:7-15.)  And accessing the internet from an unmonitored device or without a letter
15 from his employer discussing safety measures would have been a violation of Mr. Fuller's
16 supervised release conditions.  (RT 43:13-19.)  Mr. Fuller never explained why he failed
17 to provide the required letter.  (RT 43:20-22.)  Officer Carrizosa spoke with the employer,
18 Ms. Scheff, in the past, but she does not remember the employer ever mentioning the letter.
19 (RT 44:12-16.)  If she had, that would have been documented.  (RT 44:12-24.)

20 On cross-examination, Officer Carrizosa testified that she knew that Mr. Fuller had
21 worked for Ms. Scheff in the past.  (RT 46:5-7.)  In Officer Carrizosa's work phone there
22 are text messages from Mr. Fuller.  (RT 48:4-13.)  Mr. Fuller indicated that he put
23 monitoring software on his personal cell phone.  (RT 48:14-16.)  He also said he had
24 concerns about the software because it monitored everything, not just internet use, and the
25 condition is not written that way.  (RT 48:20-25, 49:1-3.)  Mr. Fuller stated that "he had
26 permission from Gloria [Adamski-Soto] to use the computer at work for work." (RT 49:14-
27 16.)  Officer Carrizosa reviewed the chronological record and sent Mr. Fuller a text
28 indicating that Gloria "said yeah to your phone – your phone, personal phone, and

1 computer as long as they had the monitoring." (RT 50:21-25, 51:1-3.) Officer Carrizosa knew that Officer Adamski-Soto had requested a letter from Mr. Fuller's employer, and Officer Carrizosa sent Mr. Fuller a text asking if a *conversation* between Officer Adamski-Soto and his employer had occurred. (RT 51:8-24.) She did not ask about the letter specifically because she already knew that the letter was not in the file. (RT 51:21-25, 52:1-2.) Mr. Fuller stated that the conversation had not happened because Officer Adamski-Soto has been out of the office for the past month. (RT 53:5-11.) Officer Carrizosa believed Mr. Fuller's reply was not entirely accurate because Officer Adamski-Soto requested the employer letter more than 30 days earlier. (RT 52:8-24.) Officer Carrizosa eventually spoke with the employer to make sure that she was "aware of the liability she was taking on." (RT 53:12-17.) Officer Carrizosa ultimately sent an email to Ms. Scheff indicating that she approved the use of the computer at work. (RT 53:18-23.)

Officer Carrizosa stated she never explicitly notified Mr. Fuller that she was taking over his supervision when Officer Adamski-Soto was out of the office. (RT 54:7-16.)

On re-direct, Officer Carrizosa stated that Mr. Fuller is "free to disagree with those conditions [of supervised release]." (RT 55:25, 56:1-8.) But he does not have a right to ignore what the probation officer says or what the court orders him to do. (RT 56:6-11.) If he believes one of the conditions is inappropriate, he can ask the court to remove or amend the wording of the condition. (RT 56:19-21.) To her knowledge, Mr. Fuller never did that. (RT 56:19-23.) Officer Carrizosa clarified that she asked Mr. Fuller if a conversation happened between Officer Adamski-Soto and his employer because the conversation would have "alleviated" the "situation" "somewhat." (RT 57:12-25, 58:1-5.) By itself, the conversation did not fulfill Officer Adamski-Soto's instruction that Mr. Fuller obtain a letter from his employer as a condition of his employment. (RT 57:12-25, 58:1-5, 58:15-20.)

When Officer Carrizosa took over Mr. Fuller's supervision, she sent a text to Mr. Fuller: "Bill, this is Anita." (RT 58:21-25, 59:2-4.) Mr. Fuller knew who she was. (RT 59:6-7.)

**Stacy Scheff** testified that Mr. Fuller has worked for her "for many years on and off." (RT 61:10-11.) There was a time when Mr. Fuller was told that he could not be on the internet, and she had to let him go. (RT 61:23-25, 62:1-4.)

Mr. Fuller recently resumed employment with Ms. Scheff. (RT 63:14-15.) Ms. Scheff never spoke with Officer Adamski-Soto, but she spoke with Officer Carrizosa. (RT 63:19-23.) Officer Carrizosa told Ms. Scheff that she had some concerns about Ms. Scheff's liability, but Ms. Scheff explained that she sits right next to Mr. Fuller and looks over his shoulder from time to time. (RT 63:22-25, 64:1-7.) Officer Carrizosa did not ask Ms. Scheff about letters or documentation that she was expected to provide to probation. (RT 64:8-13.)

Ms. Scheff stated she had conversations with Mr. Fuller about "whether he was allowed to use his work computer for work purposes." (RT. 66:14-19.) Ms. Scheff believed Mr. Fuller wanted to be compliant because otherwise he would not be able to work for her. (RT 67:2-11.) Mr. Fuller never asked her to write a letter on his behalf. (RT 68:1-3.)

**Legal Analysis.**

The court may revoke a term of supervised release if it finds by a preponderance of the evidence that the defendant violated a condition of supervised release. *United States v. Perez*, 526 F.3d 543, 547 (9th Cir. 2008); *see also* 18 U.S.C. § 3583(e)(3).

Standard Condition No. 13.

The Petition to Revoke alleges first that Mr. Fuller violated Standard Condition No. 13 by failing to follow the instructions of the probation officer related to the conditions of supervision. (Doc. 306, pp. 1-2.) Specifically, Mr. Fuller failed to follow his probation officer's direction to provide a letter from his employer regarding the safety measures that would be in place to monitor his computer use. *Id.* The court agrees.

Officer Adamski-Soto testified that she instructed Mr. Fuller that if he wanted to use the internet at his place of employment, he would have to provide her with a letter from his employer stating what safety measures were in place to monitor his internet use. (RT

12:14-21.) She did not receive the letter before she went on leave nearly six weeks later. (RT 11:18-25, 13:12-13.) Officer Carrizosa assumed supervision of Mr. Fuller when Officer Adamski-Soto went on leave. (RT 25:16-21.) She knew that Officer Adamski-Soto had requested this letter, but Mr. Fuller never provided that letter from his employer. (RT 39:1-3, 51:8-24, 37:12-15.) There is no such letter in the files. (RT 30:4-11.) Nevertheless, Mr. Fuller began working for Ms. Scheff and was using the internet while on the job. (RT 43:7-15.) The court finds the testimony of Officer Adamski-Soto and Officer Carrizosa to be credible based on their demeanor and their account of events.

Mr. Fuller argues that the government failed to prove that the employer letter was ever requested. (RT 78:17-25, 79:1-3.) He notes that the government did not provide a written letter from Officer Adamski-Soto to Mr. Fuller stating this condition. He asserts that "Ms. Officer Adamski-Soto was either being untruthful or misremembering things." (TR 79:2-3.) Mr. Fuller, however, presented no evidence that Officer Adamski-Soto had a motive for being untruthful or evidence that she has ever misremembered things in connection with her supervision of Mr. Fuller. A writing would be additional evidence supporting Officer Adamski-Soto's testimony, but it is not required for the government to prove its case by a preponderance of the evidence.

Mr. Fuller notes that when Officer Carrizosa spoke to him, she asked if a *conversation* had taken place between Officer Adamski-Soto and his employer. (RT 79:10-22.) She did not ask about a letter. Moreover, when Officer Carrizosa spoke with his employer directly, Officer Carrizosa did not ask her about a letter. Mr. Fuller argues that if Officer Adamski-Soto had asked him for a letter from his employer, Officer Carrizosa would have discussed the letter during these encounters.

Officer Carrizosa, however, explained why she did not discuss the letter during those encounters. She did not discuss the letter because she already knew that the letter was not in the file. (RT 51:21-25, 52:1-2.) She wanted to know if Mr. Fuller's employer had been apprised of the risks associated with his employment. (RT 53:12-17.) The fact

that Officer Carrizosa did not discuss the letter when she could have done so and might have been expected to do so is *some* evidence that the letter requirement never existed. But in light of Officer Carrizosa's explanation, the court concludes that her failure to mention the letter in these other conversations is not particularly strong evidence in support of Mr. Fuller's theory.

The government has shown by a preponderance of the evidence that Mr. Fuller violated Standard Condition No. 13.

Special Condition No. 9.

The Petition to Revoke further alleges that Mr. Fuller violated Special Condition No. 9 in two ways. (Doc. 306, p. 2.) First, he "failed to have installed at his own expense … software systems to monitor his internet use on any internet capable device." *Id.* Second, he used a computer at his place of employment without providing a letter from his employer regarding safety measures that were in place to monitor his computer use, which was a requirement for written permission to access the internet. *Id.* The court agrees.

When she was reviewing the case file, Officer Carrizosa discovered that Officer Adamski-Soto had received an email from IPPC, an internet software monitoring company. (RT 26:4-17.) The email notified Officer Adamski-Soto that Mr. Fuller had not kept an appointment with them to install monitoring software. (RT 26:4-17.) On August 5, 2022, Officer Carrizosa contacted IPPC to determine whether Mr. Fuller had rescheduled the appointment. (RT 27:19-22.) On August 9, 2022, IPPC responded indicating that they tried to reach Mr. Fuller again that day but received no answer. (RT 27:19-25, 28:1-3.)

On August 12, 2022, Officer Carrizosa sent a text message to Mr. Fuller asking about the IPPC communication. (RT 29:24-25, 30:1-9.) Mr. Fuller told her that he had the software placed on his cell phone but not his personal computer. (RT 30:18-25, 31:1.) He did not want the software on his personal computer because he believed that it monitored all his activity, not just his internet use. *Id*

The government has established by a preponderance of the evidence that Mr. Fuller did not have monitoring software placed on his personal computer. Mr. Fuller candidly stated that he did not put the monitoring software on his personal computer. (RT 30:18-25, 31:1.)

Moreover, a preponderance of the evidence establishes that Mr. Fuller used a computer at his place of employment without providing a letter from his employer regarding safety measures to monitor his internet use. Officer Adamski-Soto testified that she instructed Mr. Fuller that if he wanted to use the internet at his place of employment, he would have to provide her with a letter from his employer stating what safety measures were in place to monitor his internet use. (RT 12:14-21.) She did not receive the letter before she went on leave nearly six weeks later. (RT 11:18-25, 13:12-13, 68:1-3.) Officer Carrizosa testified that she knew that Officer Adamski-Soto had requested this letter, but Mr. Fuller never provided that letter from his employer. (RT 39:1-3, 51:8-24, 37:12-15.) There is no such letter in the files. (RT 30:4-11.) Mr. Fuller's employer confirmed that Mr. Fuller never requested the letter of her. (RT 68:1-3.) Nevertheless, Mr. Fuller began working for Ms. Scheff and was using the internet while on the job. (RT 43:7-15.)

Mr. Fuller notes that the computer monitoring agreement identifies two devices that are subject to that agreement: a cell phone and an Acer laptop. (RT 82:24-25, 83:1-7.) He maintains that there was a missed opportunity to install the monitoring software originally, but "ultimately Mr. Fuller gets the software installed on both devices." (RT 83:4-7.); *see also* (RT 86:8-12.) Fuller does not, however, direct the court to testimony in support of his assertion. (*See also* RT 34:1-4.) In fact, the record shows that Mr. Fuller refused to put the monitoring software on his laptop as required because it would record more than just his internet use. (RT 30:18-25, 31:1.)

On the software issue, Mr. Fuller argues that "what we have is not a violation of the conditions of supervised release but rather we have a situation where a software proposed would have overstepped the authority granted by the court, and Mr. Fuller had legitimate

questions as to how he could comply with those orders without granting permission to invade the privacy rights that he still maintains for the entirety of the use of his device." (RT 85:19-25.)  The court agrees with the general proposition but only to a point.  Mr. Fuller does retain certain privacy rights in his personal data.  *See United States v. Sales*, 476 F.3d 732, 737 (9th Cir. 2007)  ("A computer monitoring condition in some form may be reasonable. However, to comply with the Fourth Amendment, it must be narrowly tailored … producing no greater deprivation of liberty than is reasonably necessary.").  And if he believes that the monitoring software offered by IPPC is unreasonably intrusive, he has some options.  He could, for example, ask the probation officers if less intrusive software is available, or he could seek a modification of his conditions of supervised release.  (RT 55:25, 56:1-8, 56:19-21.)  He may not, however, unilaterally refuse to install the IPPC software.  (RT 56:6-11.)

**Recommendation.**

Based on the foregoing and pursuant to 28 U.S.C. § 636 (b) and LRCrim 57.6(d)(4), the Magistrate Judge **RECOMMENDS** that the District Court, after an independent review of the record, find that the Defendant violated Standard Condition No. 13 and Special Condition No. 9 of his supervised release.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections with the District Court within fourteen (14) days of being served with a copy of this Report and Recommendation.  If objections are not timely filed, they may be deemed waived.

Dated this 7th day of November, 2023.

Honorable Michael A. Ambri
United States Magistrate Judge